Bob E. Rankin, Marilyn Nichols and All Others Similarly Situated, Appellants *v.* Mt. Lebanon School District, Mt. Lebanon Board of Directors and Mellon Bank, N.A., Appellees.

Argued October 6, 1982, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Joseph M. Loughren, Wayman, Irvin & McAuley,* for appellants.

*Donald C. Bush,* with him *James C. Kletter* and *Thomas P. Peterson, Anderson, Moreland & Bush,* for appellees, Mt. Lebanon School District and Mt. Lebanon Board of School Directors.

*Walter T. McGough,* with him *Arthur J. Schwab, Anthony J. Basinski and Debra M. Coulson, Reed, Smith, Shaw & McClay,* for appellee, Mellon Bank, N.A.

OPINION BY JUDGE CRAIG, December 2, 1982:

Bob E. Rankin and Marilyn Nichols (taxpayers) appeal the order of the Court of Common Pleas of Allegheny County which sustained the preliminary objections of the Mt. Lebanon School District, the school directors and Mellon Bank, N.A., and dismissed the taxpayers' class action suit in equity.

The preliminary objections set forth demurrers and also sought dismissal on the ground of failure to exhaust a statutory remedy, namely, a statutory ap-

peal from official audit under the Public School Code.[1] Judge SILVESTRI, of the common pleas court, issued a comprehensive opinion sustaining both attacks. We need to address only the matter of failure to state a cause of action because that matter, despite a scarcity of precedent, is one which clearly resolves itself upon examining the pleadings in the light of the School Code.

In their complaints,[2] the taxpayers averred that, at all times relevant here, the bank was the school district's treasurer and the district's designated depository; that the bank was authorized to receive money for deposit in two accounts, the "special account" and the "current account;" that the local tax collector deposited the district's real estate tax revenues directly in the special account and state and federal funding agencies remitted funds directly to the current account; that the bank, holding district funds as a fiduciary, commingled the district's funds with other funds in the bank's possession without pledging appropriate collateral held by the bank's trust department; that the bank made a profit from the use of funds deposited in the district's accounts; that the bank promised to serve as the district's treasurer at no cost to the district, but has debited the district's accounts for service charges; that the district entered into "repurchase agreements"[3] with the bank under which the bank paid the district a lower interest rate than the bank makes available to other similarly situated customers; that the district earned less interest

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §24-2451.

[2] In addition to their original complaint the taxpayers filed two amended complaints.

[3] In their pleadings, the taxpayers also characterize these agreements as "short-term collateralized loans" where the district loaned money to the bank on a fixed term basis; however, the complaint does not further describe the transaction.

from repurchase agreements with the bank than it could have earned by putting its funds in investments authorized under the School Code;[4] and that the bank knew or should have known that the district could realize higher interest rates than those offered through the repurchase agreements and failed so to inform the district.

The taxpayers contend that the direct deposit of school district funds, by the local tax collector and state and federal agencies, is unlawful because, under the Code, the treasurer has the duty to receive and deposit the district's funds.[5] However, there are no

---

[4] School Code, Section 440.1, 24 P.S. §4-440.1, in pertinent part, provides:

(c) Authorized types of investments for school district funds shall be:

(i) United States Treasury bills.

(ii) Short-term obligations of the United States Government or its agencies or instrumentalities.

(iii) Deposits in savings accounts or time deposits or share accounts of institutions insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation or the National Credit Union Share Insurance Fund to the extent that such accounts are so insured, and, for any amounts above the insured maximum, provided that approved collateral as provided by law therefore shall be pledged by the depository.

(iv) Obligations of the United States of America or any of its agencies or instrumentalities backed by the full faith and credit of the United States of America, the Commonwealth of Pennsylvania or any of its agencies or instrumentalities backed by the full faith and credit of the political subdivision.

[5] Section 439 of the School Code, 24 P.S. §4-439, in pertinent part, provides:

The treasurer of each school district shall receive all State appropriations, district school taxes, and other funds belonging to the school district . . .

Section 625 of the School Code, 24 P.S. §6-625, in pertinent part, provides:

averments to support a conclusion that the bank did not receive the funds as treasurer at the same time the funds were deposited.

The School Code clearly recognizes that the treasurer's function ends where the depository's function begins. Section 625, in part, provides:

> After any funds have been deposited with such regularly designated depository by any school treasurer, he shall thereafter be relieved from all liability therefor, and all school orders drawn on the school treasurer for any funds so deposited by him shall be endorsed by said treasurer and made "Payable at ................. depository of the School District of ........."

The bank does not hold the district's funds as treasurer while those funds are on deposit in the district's current and special accounts.

The treasurer bank is the district's fiduciary; as depository, however, it and the district have a debtor-creditor relationship. The bank, when acting as the depository, is not prohibited from commingling the district's funds or from making a profit from their use and has no duty to collateralize the district's account when the bank invests the funds on deposits in the secondary money market. The taxpayers have been able to prove no authority to establish that, although the functions of treasurer and depository are separate, the bank cannot perform both roles simultaneously.

The taxpayers also contend that the school district's practice of "investing" in repurchase agreements is unlawful because such investments are not authorized under Section 440.1 of the School Code.

---

The funds of the school district shall be deposited, as directed by the board of school directors, in a designated depository, by the school treasurer. . . .

However, the taxpayers have not alleged facts establishing that the repurchase agreements here were investments in and of themselves, as opposed to a method whereby the district made an investment, either directly or indirectly, and the taxpayers have made no averment that the investments which are the subject of the repurchase agreements are not authorized investments for the district.

The taxpayers further contend that the bank breached its fiduciary duty by failing to inform the district that the bank made better interest rates available to other customers in like transactions or that the district could earn higher interest from other authorized investments. However, the decision to invest in one type of authorized investment instead of another is clearly within the discretion of the school directors.[6] Also, the bank had no duty to offer the same interest rates or fee arrangements to the district as those which it offered to other similarly situated customers. When a school district goes into the market place and invites competitive offers for a type of investment, as the pleadings indicate the district did here,[7] and when

---

[6] Section 440.1 of the School Code, in pertinent part, provides:
(a) The board of school directors in any school district of the . . . second . . . class shall invest school district funds consistent with sound business practice.
(b) The board of school directors shall provide for an investment program subject to restrictions contained in this act and in any other applicable statute and any rules and regulations adopted by the board.

[7] Paragraph 35 of the amended complaint, in part, provides:
[I]n furtherance of the investment policy attached as Exhibit "5." the Director of Business Services of the Mt. Lebanon School District, upon direction of the school administration and/or the Board of School Directors of the Mt. Lebanon School District, entered into a series of short-term collateralized loans with Mellon Bank . . .
Exhibit 5, allegedly a copy of the district's investment policy adopted by the school directors, in pertinent part, provides:

216

the district receives competitive offers in addition to that of the bank acting as district treasurer, the treasurer bank has no duty to inform the district as to the bank's terms with other customers.

We agree that the taxpayers were unable to plead averments necessary to make out a cause of action against the district, the school directors or the bank. Accordingly, we affirm.

ORDER

Now, December 2, 1982, the order of the Court of Common Pleas of Allegheny County, Docket No. GD 81-17556, dated December 16, 1981, is hereby affirmed.

---

It shall be the policy of the Mt. Lebanon School Board that:

1. All state and national banks within the Mt. Lebanon School District shall be requested, either in writing or by phone to the bank's Mt. Lebanon office, to submit competitive proposals whenever the school district wishes to make temporary investments or to obtain short term loans.

2. When funds are available for temporary investments, current quotations shall also be obtained on U.S. Treasurery bills or notes.